Search Warrant

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of

**A black Apple iPhone with a black cover, and an Android phone with lime green Otterbox cover, currently located at the Navajo Nation Police Department in Tuba City, AZ**

Case No.  23-04007MB

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona (identify the person or describe the property to be searched and give its location):

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

**As set forth in Attachment B**.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before      February 6, 2023                                    .
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

    Any U.S. Magistrate on duty in Arizona          .
         *(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (*check the appropriate box*)      ☐ for  days (*not to exceed 30*)
                                    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____

Camille D. Bibles

Digitally signed by Camille D. Bibles
Date: 2023.01.23 11:49:00 -07'00'

*Judge's signature*

City and State:  Flagstaff, Arizona

    Honorable Camille D. Bibles, U.S. Magistrate Judge
                    *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|
| 23-04007MB | | |

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date:

                                    Executing officer's signature



                                    Printed name and title

## ATTACHMENT A

### Particular Items to be Searched

An Android Phone with a lime green Otterbox cover, currently located at the FBI in

Flagstaff, AZ.

## ATTACHMENT B

## Particular Items to be Seized

The following items of evidence, contraband, fruits, and instrumentalities that relate to violations of 18 U.S.C. §§ 1153 and 1112, and A.R.S. §13-3623, which make it illegal to commit involuntary manslaughter and child abuse.

a.      All voice mail, text, and multimedia messages May 12, 2022 through May 15, 2022 stored in the telephone;

b.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from May 12, 2022 through May 15, 2022.

c.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message May 12, 2022 through May 15, 2022.

d.      Incoming and outgoing telephone numbers, from May 12, 2022 through May 15, 2022.

e.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

f.      All records pertaining to communications between the devices and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.  Information to be seized by the government

a.      All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1153 and 1112, and A.R.S. § 13-3623, which make it illegal to commit involuntary manslaughter and child abuse, between the dates May 12, 2022 through May 15, 2022.

a.      Information related to the consumption of alcohol or any substance that could impair the driver.  Additionally, any evidence related to distracting the driver from safely driving the vehicle.  Information related to child neglect.

b.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.      Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

      f.      The identity of the person(s) who sent to and/or received communications from the cellular devices.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of:

**An Android phone with lime green Otterbox
cover, currently located at the FBI in
Flagstaff, AZ**

)
)
)
)

Case No.    23-04007MB

### ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, <u>F.B.I. Special Agent Brandon King</u>, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

### As further described in Attachment A.

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized)*:

### As set forth in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

[X] evidence of a crime;

[ ] contraband, fruits of crime, or other items illegally possessed;

[X] property designed for use, intended for use, or used in committing a crime;

[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1153 and 1112 | Manslaughter |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).

[ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan Powell    *Ryan Powell*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 1/23/2023

_____
*Brandon King*
*Applicant's Signature*

Brandon King, F.B.I. Special Agent
*Printed Name and Title*

**Sworn by Telephone**

Date/Time: _____

Date: _____

City and State:  Flagstaff, AZ _____

## Camille D. Bibles

Digitally signed by Camille
D. Bibles
Date: 2023.01.23 11:48:30
-07'00'

*Judge's Signature*

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

## <u>ATTACHMENT A</u>

### Particular Items to be Searched

An Android Phone with a lime green Otterbox cover, currently located at the FBI in

Flagstaff, AZ.

## ATTACHMENT B

### Particular Items to be Seized

The following items of evidence, contraband, fruits, and instrumentalities that relate to violations of 18 U.S.C. §§ 1153 and 1112, and A.R.S. §13-3623, which make it illegal to commit involuntary manslaughter and child abuse.

a.      All voice mail, text, and multimedia messages May 12, 2022 through May 15, 2022 stored in the telephone;

b.      All transactional information of all activity of the telephones and/or voicemail accounts described above, including log files, messaging logs, local and long distance telephone connection records, records of session times and durations, dates and times of connecting, methods of connecting, telephone numbers associated with outgoing and incoming calls, cell towers used, and/or locations used from May 12, 2022 through May 15, 2022.

c.      All text messaging logs, including date and time of messages, and identification numbers associated with the handsets sending and receiving the message May 12, 2022 through May 15, 2022.

d.      Incoming and outgoing telephone numbers, from May 12, 2022 through May 15, 2022.

e.      All records indicating the services available to subscribers of individual accounts and/or identifiers described above;

      f.      All records pertaining to communications between the devices and any person regarding the account or identifier, including contacts with support services and records of actions taken.

## II.  Information to be seized by the government

      a.      All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. §§ 1153 and 1112, and A.R.S. § 13-3623, which make it illegal to commit involuntary manslaughter and child abuse, between the dates May 12, 2022 through May 15, 2022.

      a.      Information related to the consumption of alcohol or any substance that could impair the driver.  Additionally, any evidence related to distracting the driver from safely driving the vehicle.  Information related to child neglect.

      b.      Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

      c.      Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

      d.      Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

      e.      The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

      f.     The identity of the person(s) who sent to and/or received communications from the cellular devices.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

**ELECTRONICALLY SUBMITTED AFFIDAVIT IN SUPPORT
OF AN APPLICATION FOR A SEARCH WARRANT**

I, FBI Special Agent Brandon King, being first duly sworn, hereby depose and state as follows:

1.     I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been since 2019. I previously served as a sworn law enforcement officer for approximately four years with the Akron Police Department, in Akron, Ohio.    I am a graduate of the FBI Training Academy in Quantico, Virginia, where I received training in narcotics investigations, white collar crime, cyber-crime, interviewing, interrogation, evidence collection, intelligence analysis, and legal matters, among other topics.  I am currently assigned to the Flagstaff Resident Agency of the Phoenix Division. I am an "investigative or law enforcement officer" within the meaning of 18 U.S.C. § 2510(7), that is, I am an officer of the United States who is authorized by law to conduct investigations of, and make arrests for, offenses enumerated in Title 18.  In the course of my official duties, I am charged with the investigation of crimes occurring on the Navajo Nation Indian Reservation and Hopi Indian Reservation within the District of Arizona.  Based on my training, education, and experience, I know that the Navajo and Hopi Tribes are federally recognized.

2.     The information contained in this affidavit comes from my personal observations, my training and experience, and information obtained from other agents, officers, and witnesses.  This affidavit is intended to show merely that there is sufficient

1

probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## **PROCEDURAL HISTORY**

3.      On June 1, 2022, this Court signed warrant 22-4177mb, which authorized the search of two phones related to this investigation, including the Android phone that is the subject of this search warrant application.  While the other phone was searched within the timeframe authorized by the warrant, the Android phone was not.  This warrant application seeks renewed authorization to search the Android phone.

## **INTRODUCTION**

4.      As more fully described below, this matter involves the investigation of a vehicular manslaughter that took place in the early morning hours of May 14, 2022, in the Tuba City District on the Navajo Nation Indian Reservation, located within the District of Arizona.  A single-car crash killed two juvenile victims, R.H. and Ka.H., who were passengers in the car.  Another minor passenger, O.U., had serious bodily injuries.  The adult passenger, K.H., the driver's sister, sustained serious bodily injuries.  The driver, Lavah Tewawina (Lavah), also sustained injuries.  Lavah is a member of the Hopi Indian Tribe.

5.      This affidavit supports the application for a search warrant authorizing the forensic examination of an Android cell phone found at the crash site. There is probable cause to believe that evidence of involuntary manslaughter, in violation of Title 18, United States Code, §§ 1153 and 1112, will be located on the phone.  Additionally, there is probable cause to believe that evidence of child abuse, in violation of A.R.S. § 13-3623,

will be located on the phone.  The phone is particularly described in **Attachment A**, and the evidence being sought is particularly described in **Attachment B**.

**PROBABLE CAUSE**

6.      In the early morning of May 14, 2022, police dispatcher Richella Tracey received a call from a male person reporting a vehicle accident near Moencopi, Arizona. The call was transferred to the Hopi Police.  At 0407, the Hopi Police Department requested the assistance of Tuba City Police Department. At 0428, a Hopi Police Officer arrived on scene and informed Tuba City Police that the vehicle accident was at mile post 333, located on the Navajo Nation.  At 0433, Navajo Medical Emergency unit #47 arrived on scene containing two EMTs.  The EMTs confirmed there were two deceased children on scene and transported another child with significant head injuries, deemed to be in critical condition, to the hospital.

7.      Officer Lomahoynaya of the Hopi Law Enforcement Service was the first police officer to arrive on scene.  Officer Lomahoynaya approached a man named B.P., a motorist who was in the area at the time of the crash.  B.P. was holding a seriously injured child in his arms.  B.P. said there were two other children and two adult females involved in the crash.  The two adult females, Lavah and K.H., went inside B.P.'s vehicle shortly after he arrived at the scene.  Officer Lomahoynaya made contact with K.H., who said her sister Lavah had been driving.  The officer smelled a strong odor of alcohol emitting from K.H.'s breath.

8.      Officer Lomeyestewa was the second officer to arrive on scene.  Officer Lomeyestewa made contact with Lavah, who was sitting in the rear of B.P.'s vehicle.

3

Lavah told the officer, "I was in the front driving the whole time." Lavah emitted an odor of an alcoholic beverage from her person and spoke with very slurred speech.

9.     Navajo Nation Officer Simeona spoke with Lavah while on scene. According to the officer, Lavah had the strong odor of alcohol on her breath and had slurred speech.   When asked by the officer what happened, Lavah said she was driving and attempting to pass a vehicle.

10.     An Arizona Department of Public Safety (DPS) Officer arrived at the scene and assisted with the investigation.

11.     There were no child safety seats in the vehicle.

12.     As part of the investigation, the FBI interviewed B.P.  He said that he was on his way home from Tuba City when he saw headlights coming towards him; the lights were on top of a hill and soon disappeared.  B.P. observed a flash and slowed his vehicle. B.P. observed a bunch of dust and then saw a vehicle on its side.  B.P. turned his emergency lights on.  B.P. heard ladies screaming and a little boy yelling.  B.P. called a friend and asked him to notify an ambulance and police.  B.P. searched the area utilizing the light of his phone.  B.P. saw a boy in the gully.  The boy said he was hurt and cold.  The boy had blood on his face and only wore a diaper.  B.P. got his jacket from his car to wrap the child. Two women exited the crashed vehicle and eventually went to B.P.'s car without B.P. instructing them to do so.  B.P. returned to the injured boy and waited for approximately 40-50 minutes until the police arrived.  B.P. overheard one of the women telling the police that a silver SUV came too close and caused her to wreck.  B.P. did not recall seeing any vehicles in front of him or oncoming from Tuba City to the scene of the crash.

4

13.     As part of the investigation, the FBI interviewed K.H. K.H. provided her telephone number as (928) 401-8076. K.H. initially said she was the driver.   K.H. later clarified that Lavah had been the driver. K.H. stated the tire pressure light came on and they pulled over.   K.H. stated she had two beers and half a pint.   K.H. said she wanted an attorney and ended the interview.

14.     As part of the investigation, the FBI interviewed Lavah.   Lavah said her telephone was in the car and that her telephone number was (928) 401-8707.   Lavah said her sister K.H.'s phone number is (928) 401-8076.   Lavah confirmed she was member of the Hopi Tribe.   Lavah stated she would no longer answer questions without an attorney present.

15.     A law enforcement database established that the service provider for the phone numbers provided by Lavah and K.H. is Cellular One of Northeastern Arizona.

16.     Lavah was transported to the hospital.   Medical records show that approximately an hour-and-a-half after the crash, her blood alcohol concentration was .243.

### Alcohol Recovered from the Scene

17.     Officers observed a small bottle of vodka and a beer can at the crash scene. The beer can still had liquid inside.

## Photographs of Alcohol from Scene



*Image 1* – *This photograph taken by a Department of Public Safety Officer shows the condition of the vehicle after the crash.  A red circle was inserted as an overlay to the photograph in order to demonstrate the proximity of the object from Image 2 to the crash.*



*Image 2* – *This photograph taken by a Department of Public Safety Officer shows a Smirnoff – Raspberry 50ml bottle.  As seen in Image 1.*

6



*Image 3* – *This photograph taken by a Department of Public Safety Officer shows a Modello beer can located next to a service receipt from Discount Tire in Flagstaff, Arizona, linked to Lavah Tewawina.   A red circle was inserted as an overlay to demonstrate the proximity of the object to a known object belonging to Lavah Tewawina.*



*Image 4* – *This photograph taken by a Department of Public Safety Officer shows the Modello beer can from image 3 being poured out; demonstrating that there was alcohol still present inside of the can.*

## **Cellular Phones Recovered from Scene**

18.     Two cellular phones were recovered from the scene:

    a.   A black Apple iPhone with a black cover; and

    b.   An Android Phone with a lime green Otterbox cover.

19.     A DPS Officer recovered the black Apple iPhone among the debris.  The officer activated the power button and observed a message stating that a named contact (with initials O.D.) sent an iMessage at 3:49 a.m., which was around the estimated time of

the crash.   The first name of the contact who sent the message is the first name of the surviving child in the crash.

20.     The Android Phone was located below the vehicle when the vehicle was brought to an upright position.

## Photographs of Cellular Phone Recovered from Scene



*Image 5* – *This photograph taken by a Department of Public Safety Officer shows debris from the motor vehicle accident.  The red circle drawn on the photograph depicts the location of the Apple iPhone.*



*Image 6* – *A close-up photograph of the Apple iPhone circled in red from Image 5.*



*Image 7* – As stated in Paragraph 18 of this affidavit, a text message was sent at 3:49 AM from a contact with initials O.D.



*Image 8* – An Android phone was discovered once the vehicle was moved to an upright position. The phone's location is identified by the red circle.

## **TECHNICAL TERMS**

17.     Based on my training and experience, I use the following technical terms to convey the following meanings:

       a.      Computer/Laptop: A computer consists of the hardware or physical components of the equipment that can collect, analyze, create, display, convert,

store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Computer hardware includes but is not limited to any data processing units, memory typewriters, and self-contained "laptop" or "notebook" computers; internal and peripheral storage devices such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, flash or "thumb" drives, and other memory storage devices; peripheral input/output devices such as keyboards, printers, scanners, plotters, video display monitors, and optical readers, and related communication devices such as modems, cables, and connections, recording equipment, RAM or ROM units, acoustic couplets, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices; as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware such as physical keys and locks.

b.      Software. Computer software is digital information that interpreted by a computer and any of its related components to direct the way the components work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating system applications like word processing, graphics, or spreadsheet programs, and utilities, source code, object code, compilers, interpreters, and communications programs.

c.      Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of

10

transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

d.      Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

e.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four

numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

      f.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18.    Based on my training, experience, and research, I know that the cell phones recovered at the crash scene have capabilities that allow them to serve as a wireless telephone, PDA, portable media player, and internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20.    There is probable cause to believe that things that were once stored on the cell phones may still be stored there, for at least the following reasons:

a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.  Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.  Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files.  Computer users typically do not erase or delete this evidence,

13

because special software is typically required for that task.  However, it is technically possible to delete this information.

    d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

21.    As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the cell phones were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence might be on the devices because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. Based on the foregoing, the warrant I am applying for would permit the examination of the Android cell phone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans

of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23.     Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

21.     Based on the information in this affidavit, your Affiant respectfully submits there is probable cause to search the cell phone described in **Attachment A** for the things described in **Attachment B**.

**Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.**

_Brandon King_
Brandon King
Special Agent, FBI

Sworn by Telephone

Date/Time: _____

1/23/2023
Date

Camille D. Bibles

Digitally signed by Camille D. Bibles
Date: 2023.01.23 11:47:40 -07'00'

Honorable Camille D. Bibles
United States Magistrate Judge

16